1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

DAVID B. KURTZ,

11

Plaintiff,

CASE NO. 11cv5403-RBL-JRC

12

v.

REPORT AND
RECOMMENDATION ON
PLAINTIFF'S COMPLAINT

13

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration,

14

Noting Date: November 23, 2012

15

Defendant.

16

17

This matter has been referred to United States Magistrate Judge J. Richard

18

Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR

19

4(a)(4), and as authorized by *Mathews, Secretary of  H.E.W. v. Weber*, 423 U.S. 261,

20

271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 20, 25, 26).

21

The ALJ gave a detailed summary of the facts and conflicting evidence and

22

explained her conclusions. She appropriately relied in part on plaintiff's treating

23

physician's statement that did not support plaintiff's disability application, and also relied

24

on plaintiff's statements about his functional abilities. Regarding mental impairments, the ALJ found that plaintiff described being challenged by his obsessive compulsive disorder ("OCD") at his job as a disability caseworker, yet he managed to hold down this job for eighteen years before he quit and he did not demonstrate that his long-term employer was concerned about his performance and he did not demonstrate a worsening of his symptoms.

The ALJ's decision is without harmful legal error and is supported by substantial evidence in the record as a whole. Therefore, this matter should be affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

<u>BACKGROUND</u>

Plaintiff, DAVID B. KURTZ, was fifty-two years old on his alleged disability onset date of December 7, 2006 (*see* Tr. 144). He worked eighteen years for Washington County as a disability caseworker for developmentally disabled children and their families (*see* Tr. 379). Plaintiff quit his employment after being placed on medical leave in February, 2007, allegedly due to a worsening of his conditions (*see id.*).

<u>PROCEDURAL HISTORY</u>

Plaintiff protectively filed a Social Security application for a period of disability and disability insurance benefits on February 14, 2007 (Tr. 144-45). His application was denied initially and following reconsideration (Tr. 105-08, 115-17). Plaintiff's requested hearing was held before Administrative Law Judge Catherine R. Lazuran ("the ALJ") on January 26, 2010 (Tr. 43-100). On March 26, 2010, the ALJ issued a written decision in which she concluded that plaintiff was not disabled pursuant to the Social Security Act

(Tr. 24-37). On April 5, 2011, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981.

On May 26, 2011, plaintiff attached his proposed complaint to his motion to proceed *in forma pauperis* (*see* ECF Nos. 1, 6). Defendant filed the sealed administrative record regarding this matter ("Tr.") on January 6, 2012 (*see* ECF Nos. 13, 15).

In his Opening Brief, plaintiff challenges the ALJ's evaluation of (1) his credibility and testimony; (2) the medical evidence; (3) his residual functional capacity ("RFC"); and (4) whether or not his chronic pain syndrome was a severe impairment (*see* ECF No. 20, p. 11).

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering the plaintiff's age, education, and work experience, engage in any other

1   substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

2   1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

3        Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

4   denial of social security benefits if the ALJ's findings are based on legal error or not

5   supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

6   1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

7   1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is

8   such "'relevant evidence as a reasonable mind might accept as adequate to support a

9   conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v.*

10  *Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S.

11  389, 401 (1971). Regarding the question of whether or not substantial evidence supports

12  the findings by the ALJ, the Court should "'review the administrative record as a whole,

13  weighing both the evidence that supports and that which detracts from the ALJ's

14  conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting*

15  *Andrews, supra*, 53 F.3d at 1039). In addition, the Court "'must independently determine

16  whether the Commissioner's decision is (1) free of legal error and (2) is supported by

17  substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing*

18  *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v.*

19  *Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

20       According to the Ninth Circuit, "[l]ong-standing principles of administrative law

21  require us to review the ALJ's decision based on the reasoning and actual findings

22  offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the

adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. April 2, 2012) (Dock. No. 10-16578); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). In the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

<u>DISCUSSION</u>

1.  **The ALJ evaluated plaintiff's credibility and testimony properly**.

    If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999); *Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971); (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. In addition, the ALJ may "draw inferences

1   logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v.*

2   *Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D.

3   Cal. 1980)).

4           Nevertheless, the ALJ's credibility determinations "must be supported by specific,

5   cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted).

6   The ALJ may consider "ordinary techniques of credibility evaluation," including the

7   claimant's reputation for truthfulness and inconsistencies in testimony, and may also

8   consider a claimant's daily activities, and "unexplained or inadequately explained failure

9   to seek treatment or to follow a prescribed course of treatment." *Smolen, supra*, 80 F.3d

10  at 1284; *see also Verduzco v. Apfel,* 188 F.3d 1087, 1090 (9th Cir. 1999) (reliance on

11  inconsistent statements concerning drug use proper).

12

13          The determination of whether or not to accept a claimant's testimony regarding

14  subjective symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929;

15  *Smolen*, *supra*, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).

16  First, the ALJ must determine whether or not there is a medically determinable

17  impairment that reasonably could be expected to cause the claimant's symptoms. 20

18  C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Once a claimant

19  produces medical evidence of an underlying impairment, the ALJ may not discredit the

20  claimant's testimony as to the severity of symptoms "based solely on a lack of objective

21  medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*,

22  947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at

23  1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must

24

provide specific "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [] residual functional capacity assessment" (Tr. 32). Although plaintiff argues that the ALJ improperly determined plaintiff's residual functional capacity ("RFC") before assessing his credibility and testimony, it is clear from the ALJ's discussion that this sentence simply indicates the conclusions by the ALJ that are about to be explained in the subsequent discussion (*see id.*).

Based on her discussion of the facts and evidence, the ALJ relied on multiple factors when failing to credit fully plaintiff's testimony and credibility (*see* Tr. 32-35). In part, the ALJ relied on the objective medical evidence and the treatment records of plaintiff. For example, the ALJ discussed the opinion from state agency non-examining, evaluating physician, Dr. Sharon B. Eder, M.D. ("Dr. Eder") (Tr. 32). As indicated by the ALJ, regarding plaintiff's physical abilities, Dr. Eder opined that plaintiff could "lift 20 pounds occasionally and 10 pounds frequently, and he could stand or walk for 6 hours in an 8 hour workday and he could sit for 6 hours in an 8 hour workday" (Tr. 33 (*citing* Exhibit 8/F2, Tr. 386)). As noted by plaintiff, Dr. Eder opined that plaintiff only was

partially credible (*see* Opening Brief, ECF No. 20, p. 7 (*citing* Tr. 390, 392)). The Court

notes that Dr. Eder referenced "Dr. Dickinson comments that [plaintiff] c/o [complained

of] chronic fatigue but did not show any cognitive or physical fatigue after the interview

[and] that [he] drove to the exam with his wife and was going shopping with her to

complete errands afterwards" (Tr. 392).

      Reviewing the medical evidence, the ALJ also referenced that Dr. Martin B. Lahr,

M.D., M.P.D. ("Dr. Lahr") reviewed plaintiff's medical record and affirmed the opinions

of Dr. Eder, however, the ALJ incorrectly named the doctor (*see* Tr. 33 (Dr. Lahr

"affirmed the opinion of Dr. Lahr")). This is a harmless error as the record reflects clearly

that Dr. Lahr affirmed the opinions of Dr. Eder (Tr. 471), and the ALJ indicated this

understanding when she found in her written decision that the "opinions of Dr. Eder and

Dr. Lahr are consistent with the medial record that shows the claimant does have some

back problems, but that his medical treatment has been conservative and has included

mainly use of pain medication" (Tr. 33). The ALJ gave significant weight to "the

opinions of Dr. Eder and Dr. Lahr that the claimant can do approximately the light level

of work" (*id.*).

      The ALJ's discussion of the objective medical evidence also included a discussion

of the opinion of plaintiff's "treating physician who dealt [with] his physical complaints,

Maggie Yu, MD" (*see id.*). The ALJ noted that Dr. Yu "submitted an unsigned statement

that simply read 'Dr. Yu does not support his disability;'" that Dr. Yu was aware of

plaintiff's physical and mental symptoms; that she was in a good position to assess

plaintiff's RFC; that she did not opine any functional limitations on plaintiff's ability to

work; and "it appears that she believes that he is able to work" (*id.*). The ALJ's decision to give great weight to the opinion of Dr. Yu is discussed further in the context of the ALJ's review of the medical evidence, *see supra*, section 2; but the Court notes that it provides some support for the ALJ's failure to credit fully plaintiff's testimony and allegations regarding his ability to work.

With respect to the objective medical evidence regarding plaintiff's mental impairments and symptoms, the ALJ reviewed the opinions of examining doctor, Dr. Steven Dickinson, Psy.D. ("Dr. Dickinson"), which the ALJ gave "great weight" (Tr. 34). The ALJ noted Dr. Dickinson's mental status examination of plaintiff and that plaintiff scored 28 out of 30 points (*id.* (*citing* Exhibit 7F/4, Tr. 381)). As indicated by the ALJ,

> Dr. Dickinson said that the claimant was able to complete all the paperwork without any assistance, and that the claimant withstood the rigors of his interview without exhibiting cognitive or physical fatigue (internal citation to Exhibit 7F/1, 7F/5). Dr. Dickinson assessed the claimant's Global Assessment of Functioning (GAF) score at 62, indicating that the claimant had some mild symptoms or some difficulty in social, occupational or school functioning, but that he was generally functioning pretty well (internal citation to Exhibit 7F/6). . . . . Dr. Dickinson's opinion is consistent with the medical record that shows that the claimant does have some mental problems, but these are not very severe. His activities of daily living show that he is able to live alone and take care of himself. For these reasons, the opinion of Dr. Dickinson is given great weight.

(Tr. 34 (*citing* Tr. 378, 382, 383)). Dr. Dickinson also indicated his summary opinion that "the physical complaints and resulting social and occupational impairment were in excess of what would be expected given [plaintiff]'s history, physical examination, and laboratory findings" (Tr. 383). This opinion appears based on findings by Dr. Dickinson, such as that plaintiff "demonstrated a tendency to respond with 'We'll get to that . . . '

when asked specific questions about his symptoms;" that plaintiff "reported that his

attention to hygiene had declined including bathing regularly although there was no

motor retardation or vegetative symptoms usually associated with this area of behavior;"

that plaintiff "was unable to describe his experience of major depressive symptoms in the

past in a manner similar to adults with a history of disabling depression;" and that he

"reported having suicidal ideation but not in context of stressors" (*see* Tr. 381-82, 383).

Based on a review of the relevant record, the Court concludes that the ALJ's

summary of the facts and medical evidence is supported by substantial evidence in the

record as a whole. The Court also concludes that the ALJ's discussion of the objective

medical evidence provides some support for the ALJ's failure to credit fully plaintiff's

testimony and credibility.

Although an ALJ may not rely solely on the objective medical evidence when

failing to credit fully a claimant's testimony, the ALJ here also relied in part on plaintiff's

activities of daily living; inconsistent reports; and unsupported allegations inconsistent

with work history in order to support the ALJ's failure to credit fully plaintiff's

allegations with respect to his residual functional capacity ("RFC") (*see* Tr. 31-32). For

example, the ALJ noted plaintiff's testimony that "he is able to complete his activities of

daily living, which include housework, vacuuming, cooking and yard work, as well as

driving a car, and going to the library to use the computers and check out movies" (Tr.

32).  She also noted plaintiff's testimony that he was "able to lift 40 pound bags of cat

litter, and bring them from his car, although he normally purchases the 25 pound bags"

(*id.*). The ALJ noted plaintiff's testimony that he could "stand for 15 minutes, and walk

for 20 to 30 minutes" (*id.*). Although the ALJ did not rely explicitly on plaintiff's activities of daily living in order to make a general credibility finding, it is clear that she relied on them in order to support aspects of her determination regarding his RFC, such as that he could "lift 40 pounds occasionally and 10 pounds frequently, [] can stand or walk 15 to 20 minutes at a time," could "perform simple and detailed tasks, and [] [] engage in social interaction on an occasional to frequent basis" (*see* Tr. 31-32). This reliance was proper.

In addition, the ALJ also found that plaintiff's "allegations that he has severe OCD are not entirely credible" (*see* Tr. 32). The ALJ noted that plaintiff testified that he suffered from OCD symptoms while he was working and that they created a challenge for him (*id.*). At his administrative hearing, plaintiff testified that his OCD affected his work "greatly in terms of with my work there is a tremendous amount of case notes, record keeping, you know, forms to, to fill out. So that was a real challenge getting through those, and always was lagging behind on, on, on those tasks" (Tr. 80). Plaintiff explained:

> Well, say in doing case notes, I would do the same thing. You know, it's almost like a perfectionism to get the - - get it to sound right, and then to read it over and over again so it was okay in my mind that I had done it well. And we'd also have a lot of what we called instant reports we'd get in from people that I worked with. And then that whole reading thing, the same thing, reading it word for word making sure I didn't miss anything. So it was a very slow process for me.

(Tr. 80).

In her written decision, the ALJ indicated that plaintiff's allegations that his OCD symptoms were severe were not credible, because he testified that they presented challenges for his work as a mental health services coordinator, yet he "was able to work

for 19 years before he quit, and he has not submitted any evidence to show that his boss was concerned about the claimant's work performance, nor has he submitted any objective evidence to explain why he has had a worsening of symptoms" (*see* Tr. 33). It is clear from the ALJ's written decision that the ALJ found an inconsistency between plaintiff's successful long-term work history, and his allegations and testimony of severe psychological symptoms concurrent with the time frame of his work history. The ALJ also found an inconsistency between the different reports by plaintiff, noting that for one treatment record, plaintiff failed to report any OCD symptoms (*see* Tr. 33 (*citing* treatment report of Dr. Steven Dickinson, Psy.D. ("Dr. Dickinson"))).

The Court concludes that the ALJ provided numerous valid reasons for her RFC and her failure to credit fully plaintiff's allegations and testimony, including lack of support from and contradiction with the objective medical record; inconsistent reporting regarding allegedly disabling symptoms; inconsistency with plaintiff's work history; and plaintiff's activities of daily living. Based on a review of the relevant record, the Court concludes that the ALJ provided clear and convincing reasons for her failure to credit fully plaintiff's credibility and testimony. *See also Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722.

2.  **The ALJ evaluated the medical evidence properly**.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).   If the medical evidence in the

record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*quoting Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*citing Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980))).  It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599, 601 (9th Cir. 1999)). Determining whether or not inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Morgan, supra,* 169 F.3d at 603. The ALJ also may draw inferences "logically flowing from the evidence." *Sample, supra,* 694 F.2d at 642 (citations omitted).

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9); *see also* 20 C.F.R. § 416.902 (treating physician is one who provides treatment and has "ongoing treatment relationship" with claimant). However, "[t]he ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004) (*quoting Magallanes v.*

*Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). In addition, "[a] physician's opinion of disability 'premised to a large extent upon [plaintiff]'s own accounts of h[er] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan, supra,* 169 F.3d at 602 (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432, 433-34 (9th Cir. 1988))).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick, supra*, 157 F.3d at 725 (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. *Reddick, supra*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). However, the ALJ "need not discuss *all* evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.* (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

1    In general, more weight is given to a treating medical source's opinion than to the

2    opinions of those who do not treat the claimant. *Lester, supra*, 81 F.3d at 830 (*citing*

3    *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  On the other hand, an ALJ need

4    not accept the opinion of a treating physician, if that opinion is brief, conclusory and

5    inadequately supported by clinical findings or by the record as a whole. *Batson v.*

6    *Commissioner of Social Security Administration*, 359 F.3d 1190, 1195 (9th Cir. 2004)

7    (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Thomas v.*

8    *Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).  An examining physician's opinion is

9    "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*,

10   81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(d).  A non-examining

11   physician's or psychologist's opinion may not constitute substantial evidence by itself

12   sufficient to justify the rejection of an opinion by an examining physician or

13   psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may

14   constitute substantial evidence when it is consistent with other independent evidence in

15   the record." *Tonapetyan, supra*, 242 F.3d at 1149 (*citing Magallanes, supra*, 881 F.2d at

16   752).  "In order to discount the opinion of an examining physician in favor of the opinion

17   of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons

18   that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d

19   1462, 1466 (9th Cir. 1996) (*citing Lester, supra*, 81 F.3d at 831); *see also* 20 C.F.R. §

20   404.1527(d)(2)(i) (when considering medical opinion evidence, the Commissioner will

21   consider the length and extent of the treatment relationship). The ALJ "may reject the

22   opinion of a non-examining physician by reference to specific evidence in the medical

1 │ record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v.*

2 │ *Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews, supra*, 53 F.3d at 1041).

3 │     a.  Dr. Maggie Yu, M.D. ("Dr. Yu"), treating physician

4 │     Dr. Yu was plaintiff's treating physician for his physical complaints from

5 │ December, 2006 through November, 2007 (*see* Opening Brief, ECF No. 20, p. 4). The

6 │ ALJ discussed the treatment relationship of Dr. Yu with plaintiff, and noted that Dr. Yu

7 │ "submitted an unsigned statement that simply read 'Dr. Yu does not support his

8 │ disability'" (Tr. 33 (*citing* Exhibit 29F/1, *i.e.*, Tr. 632)). The ALJ noted that Dr. Yu was

9 │

10 │ aware of plaintiff's physical and mental symptoms, and indicated that Dr. Yu was "in a

11 │ good position to assess the claimant's residual functional capacity" (*see* Tr. 33). The ALJ

12 │ further explained her determination to give great weight to Dr. Yu's opinion as follows:

13 │         Because Dr. Yu did not opine any limitations, and apparently provided
   │         the statement that she does not support finding claimant disabled, it
14 │         appears that she believes that he is able to work. Dr. Yu's opinion is
   │         consistent with the medical record that shows the claimant has had
15 │         conservative treatment for his physical symptoms, and it is consistent
   │         with the claimant's own description of his activities of daily living,
16 │         which includes the ability to lift 40 pounds.

17 │ (Tr. 33).

18 │     The Court concludes that the ALJ's inference that Dr. Yu believed that plaintiff

19 │ was able to work is a finding supported by substantial evidence in the record as a whole.

20 │ *See Magallanes*, *supra*, 881 F.2d at 750. Plaintiff contends that the ALJ improperly failed

21 │ to discuss evidence, such as Dr. Yu's opinion that plaintiff posed a "complex picture"

22 │ (*see* Opening Brief, ECF No. 20, p. 13). However, plaintiff's discussion of the important

23 │ details of Dr. Yu's treatment record entails many of plaintiff's subjective reports and does

24 │

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 16

not include any opinion from Dr. Yu that plaintiff suffered from any particular limitation on his ability to work. For these reasons and based on a review of the relevant record, the Court concludes that the ALJ did not fail to discuss any significant probative evidence and did not commit harmful error in the evaluation of the opinions of Dr. Yu. *See Vincent*, *supra*, 739 F.2d at 1394-95 (*quoting Cotter*, *supra*, 642 F.2d at 706-07). Plaintiff's argument that the ALJ committed legal error by failing to discuss significant evidence and by ignoring "evidentiary tone and content" of Dr. Yu's treatment records and other medical evidence is not persuasive.

    b.  Dr. Elizabeth Forbes, Psy.D. ("Dr. Forbes")  and Dr. Roy Schlegel, M.D. ("Dr. Schlegel"), treating doctors

       The ALJ discussed the opinions of Drs. Forbes and Schlegel (*see* Tr. 34-35). The ALJ noted that both doctors "opined that based on the claimant's OCD, he is unable to work" (Tr. 34 (*citing* Exhibit 27F/1, 28F/4)). The ALJ found that these opinions appeared to have been "based solely on the claimant's subjective complaint of OCD symptoms, and as discussed above, the claimant is not entirely credible in his OCD complaints" (*see* Tr. 35); *see also supra*, section 1. The Court already has discussed the findings by the ALJ regarding plaintiff's inconsistent reports of OCD symptoms and regarding plaintiff's successful maintenance of full time employment for almost two decades while concurrently suffering from allegedly severe OCD symptoms, *see supra*, section 1 (*see also* Tr. 33). In addition, based on a review of the relevant record, the Court finds that the ALJ's finding that Drs. Forbes and Schlegel based their opinions solely on plaintiff's

subjective reports is supported by substantial evidence in the record as a whole, as discussed further below.

First, the Court notes that Dr. Schlegel's February 25, 2010 opinion included his explicit indications that he was relying on plaintiff's self-reports (*see* Tr. 623-24). For example, in response to the question regarding what symptoms the plaintiff suffered from, Dr. Schlegel indicated that plaintiff "has reported a life-time inability to complete tasks, clean up small details on big projects, remain organized and remain on-task at work" (Tr. 623). Similarly, when asked to indicate what effect plaintiff's mental health symptoms had on his ability to accomplish work-related tasks, Dr. Schlegel indicated that plaintiff had "reported to [him] that he cannot perform the functions and duties of his previous work" (Tr. 624).

Dr. Forbes likewise included the self-reported symptoms of plaintiff when providing her February 18, 2010 opinion (*see* Tr. 625-31). For example, she indicated that plaintiff "reported that he has many rituals that he performs daily" (Tr. 625). Dr. Forbes then listed plaintiff's report of how long it takes him to perform daily activities, such as 30 minutes to shower; 30-40 minutes to shave; 30-45 minutes for the "starting-the-day-routine"; and 30-60 minutes to leave the house (Tr. 625-26). Dr. Forbes included her opinion that plaintiff's "obsessions and compulsions are so severe that he is unable to perform any series of tasks up to the standards of an employer" (Tr. 628). The ALJ made the logical inference that Dr. Forbes' opinion regarding plaintiff's ability to work, or his inability to work, was based on plaintiff's self-reported descriptions of his routines and obsessive-compulsive tendencies (*see* Tr. 625-28).

In addition to finding that Drs. Schlegel and Forbes relied on plaintiff's unreliable self-reports, the ALJ provided an additional reason for her failure to credit fully the opinions of Drs. Schlegel and Forbes. The ALJ also indicated that she was giving greater weight to the opinion of Dr. Dickinson "because he conducted objective tests and was thorough in his evaluation" (*see* Tr. 25). The Court already has discussed the opinion of Dr. Dickinson, including Dr. Dickinson's mental status examination ("MSE") of plaintiff and that plaintiff scored 28 out of 30 points on his MSE, *see supra*, section 1. The Court also quoted the discussion by the ALJ, including the ALJ's findings regarding Dr. Dickinson's assessment of plaintiff's "Global Assessment of Functioning (GAF) score at 62, indicating that the claimant had some mild symptoms or some difficulty in social, occupational or school functioning, but that he was generally functioning pretty well" (Tr. 34 (*citing* Exhibit 7F/6, Tr. 383)).  Dr. Dickinson's MSE revealed a number of areas in which plaintiff demonstrated intact functioning, (Tr. 381-82). For example, Dr. Dickinson indicated that plaintiff "demonstrated intact memory functioning in most areas except for being able to recall with consistency what activities he had done two days before and/or what meals he had eaten during the past week" (Tr. 381). Dr. Dickinson also indicated that "the only points he missed were for recalling 2-out-of-3 words after three minutes (-1 point), and for missing 5 X 13 = 65 as he concluded it was 78" (*id.*).

Based on a review of the relevant record, the Court concludes that the ALJ's review of the medical evidence by acceptable medical sources was proper. The ALJ's findings that Drs. Forbes and Schlegel relied on plaintiff's self-reports and that those self-reports were not reliable entirely both are findings based on substantial evidence in the

1    record as a whole. *See Magallanes*, *supra*, 881 F.2d at 750. In addition, the ALJ's

2    decision to give greater weight to the opinion of examining doctor, Dr. Dickinson, than to

3    the opinions of treating doctors, Drs. Forbes and Schlegel, on the basis of the reliance of

4    Drs. Forbes and Schlegel on plaintiff's unreliable self-reports; and on the basis of the

5    thoroughness of Dr. Dickinson's evaluation and his conduction of objective tests was a

6    proper decision based on specific and legitimate reasons. *See Lester, supra*, 81 F.3d at

7    830-31; *Morgan, supra,* 169 F.3d at 602.

8        c.  Ms. Sherry Davidson, RN, PMHNP, ("Nurse Davidson")

9        Plaintiff argues that the ALJ did not evaluate properly the opinion by Ms. Sherry

10   Davidson, RN, PMHNP, ("Nurse Davidson") (*see* Opening Brief, ECF No. 20, pp. 17-

11   19). Plaintiff fails to cite the appropriate standard of review for the ALJ's treatment of

12   such other medical evidence. Instead, plaintiff argues that the ALJ "went on to reject Ms.

13   Davidson's evidence for four reasons, none of them clear and convincing" (*id.* at 17).

14   However, plaintiff has not cited any case law or relevant regulation that requires an ALJ

15   to provide clear and convincing reasons to discount the contradicted opinion of a lay

16   source.

17       Pursuant to the relevant federal regulations, in addition to "acceptable medical

18   sources," that is, sources "who can provide evidence to establish an impairment," *see* 20

19   C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

20   who are defined as "other non-medical sources," *see* 20 C.F.R. § 404.1513 (d)(4), and

21   "other sources" such as nurse practitioners and chiropractors, who are considered other

22   medical sources, *see* 20 C.F.R. § 404.1513 (d)(1). *See also Turner v. Comm'r of Soc.*

23

24

1  *Sec*., 613 F.3d 1217, 1223-24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social

2  Security Ruling "SSR" 06-3p, 2006 SSR LEXIS 5, 2006 WL 2329939. An ALJ may

3  disregard opinion evidence provided by "other sources," characterized by the Ninth

4  Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing

5  so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.

6  2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is

7  because in determining whether or not "a claimant is disabled, an ALJ must consider lay

8  witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*,

9  *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v.

10  Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

11

12       However, "only 'acceptable medical sources' can [provide] medical opinions

13  [and] only 'acceptable medical sources' can be considered treating sources. *See* 2006

14  SSR LEXIS 5 at *3-*4 (internal citations omitted). Nevertheless, evidence from other

15  sources, that is, lay evidence, can demonstrate "the severity of the individual's

16  impairments(s) and how it affects the individual's ability to function." *Id.* at *4. The

17  Social Security Administration has recognized that with "the growth of managed health

18  care in recent years and the emphasis on containing medical costs, medical sources who

19  are not 'acceptable medical sources,' . . . have increasingly assumed a greater

20  percentage of the treatment and evaluation functions previously handled primarily by

21  physicians and psychologists." *Id.* at *8. Therefore, according to the Social Security

22  Administration, opinions from other medical sources, "who are not technically deemed

23

24

'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects." *Id.*

Relevant factors when determining the weight to be given to other medical sources include:

> How long the source has known and how frequently the source has seen the individual; How consistent the opinion is with other evidence; The degree to which the source presents relevant evidence to support an opinion; How well the source explains the opinion; Whether [or not] the source has a specialty or area of expertise related to the individuals' impairments(s), and Any other factors that tend to support or refute the opinion.

*Id.* at *11. In addition, the fact "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because . . . 'acceptable medical sources' 'are the most qualified health care professionals." *Id.* at *12. However, at noted by plaintiff here, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medial source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.* at *12-*13.

The ALJ included the following discussion regarding the opinion from other medical source, Nurse Davidson, in her written decision:

> The claimant's therapist Sherry Davidson, RN, PMHNP opined that the claimant was 'unable to cope successfully with very basic situations' and that the claimant was unable to work (internal citation to Ex. 24F/1, Ex. 24F/4, Ex. 24F/7). Ms. Davidson noted that she took her notes in shorthand, but she only transcribed them 'where I thought it was helpful' (internal citation to Ex. 26F/2). She also stated 'to Xerox chart notes would take considerable time, which I don't have' and 'therefore, I am

sending what I believe is helpful' (internal citation to Ex. 26F/5). Because Ms. Davidson did not submit all of her treatment notes, it is unclear what she based her opinion on, but from what notes she did submit, Ms. Davidson's opinion regarding the claimant's mental functioning appears to be based primarily on the claimant's subjective reporting. It is noted that her opinion significantly differs from the opinion of Dr. Dickinson, who based his opinion on objective testing and a clinical interview. For these reasons, Ms. Davidson's opinion is given little weight. Another reason to give her limited weight is that she is not an acceptable medical source under the Social Security Administration's regulations. Dr. Dickinson has more expertise than Ms. Davidson and he is entitled to more weight.

(Tr. 34).

Although the ALJ fails to indicate explicitly that an opinion from another medical source, or a lay opinion, in some circumstances can be entitled to greater weight than the opinion of an acceptable medical source, there is no error as the record in this matter does not demonstrate conclusively that such circumstances are present here. The relevant Social Security Regulation indicating that a lay medical opinion may be entitled to greater weight also indicates "that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source' because  . . . 'acceptable medical sources' 'are the most qualified health care professionals." *See* 2006 SSR LEXIS 5 at *12. The ALJ here did exactly that, noting that Nurse Davidson's "opinion significantly differs from the opinion of Dr. Dickinson, who based his opinion on objective testing and a clinical interview" (*see* Tr. 34).

The Court already has discussed the objective testing and the MSE by Dr. Dickinson, *see supra*, sections 1, 2.b. The Court also notes that although plaintiff faults

1   the ALJ for using the lack of a complete treatment record from Nurse Davidson as

2   support for her failure to credit Nurse Davidson's opinion fully, the ALJ appears to

3   discuss this fact because "The degree to which the source presents relevant evidence to

4   support an opinion; [and] How well the source explains the opinion" both are relevant

5   factors when determining the amount of weight to give to an opinion from another

6   medical source. *See* 2006 SSR LEXIS 5 at *11. In addition, the ALJ explicitly indicates

7   that this factor made unclear the basis for Nurse Davidson's opinion (*see* Tr. 34). The fact

8   that Nurse Davidson's notes include shorthand; and include her statements that she was

9   transcribing notes only "where [she] thought it was helpful" and that she was not

10  Xeroxing all of the treatment record are findings supported by substantial evidence in the

11  record as a whole (*see* Tr. 579, 582). The ALJ also found that the treatment notes that

12  were provided by Nurse Davidson indicated reliance on plaintiff's subjective report.

13  Although this factor does not support an ALJ's decision to fail to credit fully an opinion

14  where plaintiff's credibility is credited fully, it provides support for the ALJ's decision

15  here, where the ALJ has determined without harmful legal error that plaintiff's subjective

16  reports regarding the severity of his symptoms and impairments are not credible entirely,

17  *see supra*, section 1.

18       The ALJ also explicitly contrasts Nurse Davidson's opinion with Dr. Dickinson's

19  opinion and emphasizes the objective medical evidence provided by Dr. Dickinson in

20  support of his opinion (*see* Tr. 34). Based on the relevant record, the Court concludes that

21  the ALJ did not fail to discuss any significant, probative evidence in the discussion of the

22  medical evidence and the other medical evidence. In addition, the Court concludes that

1  the ALJ provided not only germane reasons, as required, but at least specific and

2  legitimate reasons for her decision to fail to credit fully the opinions of Nurse Davidson.

3

4     3.  **The ALJ evaluated properly the issue of whether or not plaintiff's chronic**

5        **pain syndrome was a severe impairment**.

6        Step-two of the administration's evaluation process requires the ALJ to determine

7  whether or not the claimant "has a medically severe impairment or combination of

8  impairments." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted);

9  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (1996). The "step-two determination of

10  whether a disability is severe is merely a threshold determination of whether the claimant

11  is able to perform his past work." *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

12        An impairment is "not severe" if it does not "significantly limit" the ability to

13  conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work

14  activities are "abilities and aptitudes necessary to do most jobs," including, for example,

15  "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling;

16  capacities for seeing, hearing and speaking; understanding, carrying out, and

17  remembering simple instructions; use of judgment; responding appropriately to

18  supervision, co-workers and usual work situations; and dealing with changes in a routine

19  work setting."  20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments

20  can be found 'not severe' only if the evidence establishes a slight abnormality that has

21  'no more than a minimal effect on an individual[']s ability to work.'"  *Smolen, supra*, 80

22

23

24

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 25

F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (*i.e.*, the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009). If a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *Bowen, supra*, 482 U.S. at 146.

Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.1453(a), 416.912(a); *Bowen, supra*, 482 U.S. at 146; *see also Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998) (*citing Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995)). It is the claimant's burden to "'furnish[] such medical and other evidence of the existence thereof as the Secretary may require.'" *Bowen, supra*, 482 U.S. at 146 (*quoting* 42 U.S.C. § 423(d)(5)(A)) (*citing Mathews v. Eldridge*, 424 U.S. 319, 336 (1976)); *see also McCullen v. Apfel*, 2000 U.S. Dist. LEXIS

19994 at *21 (E.D. Penn. 2000) (*citing* 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.1505, 404.1520).

Plaintiff contends that the ALJ erred by failing to find that his alleged chronic pain syndrome was a severe impairment. However, plaintiff has directed the Court's attention only to evidence that plaintiff has received a diagnosis of chronic pain syndrome and has often complained of pain.

A finding that an impairment is severe requires more than a diagnosis and evidence of subjective complaints of pain. It is a claimant's burden to demonstrate that the alleged impairment was "severe enough to limit significantly the claimant's ability to perform most jobs." *See Bowen, supra*, 482 U.S. at 146. Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *See Fair, supra*, 885 F.2d at 603. Plaintiff has not directed the Court to any evidence that demonstrates that his alleged chronic pain syndrome significantly limited his ability to perform most jobs, and hence, "by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity." *See id.*

Plaintiff has not demonstrated significant limitation suffered as a result of his chronic pain syndrome ("CPS"), but even if this Court were to conclude that the ALJ erred in failing to find that plaintiff's alleged CPS was a severe impairment, it still would be harmless error. The step two finding is only a threshold finding, therefore if a claimant has any particular severe impairment, his application will proceed to step three of the sequential disability evaluation process. Therefore, in order for the ALJ's failure to

consider plaintiff's CPS to be a severe impairment to constitute a harmful error, plaintiff

needs to show that such failure affected the ultimate determination regarding disability.

*See Molina, supra*, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also*

28 U.S.C. § 2111; *Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d

at 1054-55. Plaintiff did not demonstrate as such.

      Based on the relevant record and for the reasons discussed, the Court concludes

that the ALJ's failure to find that plaintiff's alleged chronic pain syndrome was a severe

impairment is not harmful error.

      4.  **The ALJ evaluated properly plaintiff's residual functional capacity ("RFC")
and the remainder of the sequential disability evaluation process**.

      The challenges by plaintiff to the ALJ's determination regarding his RFC mainly

repeat the challenges made to the medical evidence already discussed, *see supra*, section

2. Plaintiff also specifically raises in this context the ALJ's evaluation of the opinion of

Dr. Frank Lahman, Ph.D. ("Dr. Lahman") regarding concentration, persistence and pace

and limitation to simple, multi-step tasks (*see* Opening Brief, ECF No. 20, p. 20 (*citing*

Tr. 403, 407, 409)).

      The ALJ discussed the evaluation of reviewing medical consultant, Dr. Lahman

(*see* Tr. 34). The ALJ noted his opinion that plaintiff "had a moderate limitation in his

ability to maintain attention and concentration for extended periods, but that the claimant

was able to consistently maintain concentration, persistence and pace for simple, multi-

step tasks for normal work periods" (Tr. 34). The ALJ gave the opinion by Dr. Lahman

little weight (*id.*).  She indicated that the specific opinion by Dr. Lahman that plaintiff was "limited to simple tasks [is] not consistent with the medical record that shows the claimant is able to live alone, care for himself, and attend medical appointments, and also [is] inconsistent with his testimony that he is able to use the internet for online banking and watch movies he checks out from the library" (*id.*).

Based on a review of the relevant record, the Court concludes that the ALJ's findings regarding the opinions of Dr. Lahman are based on substantial evidence in the record as a whole. *See Magallanes*, *supra*, 881 F.2d at 750. The ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (*citing Gomez v. Chater*, 74 F.3d 967, 972 (9th Cir. 1996)); *Andrews, supra*, 53 F.3d at 1041). The Court concludes that the ALJ appropriately rejected the opinion of non-examining doctor, Dr. Lahman, by referring to specific evidence in the medical record that was not consistent with Dr. Lahman's opinions. *See Sousa*, *supra*, 143 F.3d at 1244. The remainder of the ALJ's decision relies on findings already found to be proper by the Court.

<u>CONCLUSION</u>

The ALJ provided a thorough evaluation of the facts and evidence and appropriately explained her findings and conclusions. The ALJ's findings are without harmful legal error and are based on substantial evidence in the record as a whole.

Based on these reasons and the relevant record, the undersigned recommends that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) to the

1  Commissioner for further consideration.  **JUDGMENT** should be for **DEFENDANT**

2  and the case should be closed.

3          Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

4  fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R.

5  Civ. P. 6.  Failure to file objections will result in a waiver of those objections for

6  purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C).

7  Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the

8  matter for consideration on November 23, 2012, as noted in the caption.

9          Dated this 1st day of November, 2012.

10

11

12

13  J. Richard Creatura
   United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24